IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PETER REEVES                                                                   PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:23-cv-333-TSL-MTP

CITY OF LEXINGTON, ET AL.                                        DEFENDANTS

**ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Compel [174]. Having considered the parties' submissions, the record, and the applicable law, the Court finds that the Motion [174] should be GRANTED in part and DENIED in part.

BACKGROUND

On August 16, 2022, five Plaintiffs—Robert Harris, Darius Harris, Eric Redmond, Malcolm Stewart, and Peter Reeves—filed a civil action (3:22-cv-479-TSL-MTP) against the City of Lexington ("the City"), its interim police chief Charles Henderson, and its former police chief Sam Dobbins, asserting claims under 42 U.S.C. § 1983 for violations of their rights under the First, Fourth, and Fourteenth Amendments and alleging racial discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*. On October 3, 2022, Plaintiffs amended their complaint to add a claim under the Privileges and Immunities Clause and to name four Lexington police officers—Cordarius Epps, Justin Newell, James Shiers, and Derrick Scott—as additional Defendants. Plaintiffs alleged that Defendants engaged in a campaign of racial and retaliatory abuse and harassment of Lexington's black citizens. According to Plaintiffs, the alleged abuse and harassment included, among other things, falsely arresting black citizens, subjecting black citizens to excessive force, and setting up roadblocks exclusively in black neighborhoods.

1

After Defendants moved for judgment on the pleadings, the Court entered an Opinion and Order [95] on April 11, 2023, dismissing the majority of Plaintiffs' claims. There remain only two Plaintiffs, Eric Redmond and Peter Reeves. The only claims remaining are Redmond's Fourth Amendment claims for false arrest against Defendants Shiers and Dobbins and Reeves's claims against the City and Defendants Henderson, Epps, and Newell based on alleged violations of Reeves's Fourth Amendment rights and Fourteenth Amendment equal protection rights relating to roadblock stops. On May 24, 2023, the Court severed Reeves's claims into a new civil action, the case *sub judice*.

On May 22, 2023, Reeves served interrogatories and requests for production of documents on the City. *See* Discovery Requests [174-1]. The City served its responses on July 19, 2023. *See* Notices [145] [146]. On August 23, 2023, following a conference between the parties, Plaintiff served revised discovery requests. *See* Discovery Requests [174-4]. The City served its responses to the revised requests on September 15, 2023. *See* Notice [164].

The Court conducted a telephonic discovery conference with the parties concerning disputes arising from the discovery requests and responses. The parties were unable to resolve all their disputes, and on November 15, 2023, Plaintiff filed the instant Motion [174] requesting an order from the Court compelling the City to produce information responsive to certain discovery requests, specifically Interrogatory No. 2 and Requests for Production Nos. 1, 4, 13, and 18.

**LAW AND ANALYSIS**

Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

This Rule also specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute. Finding a just and appropriate balance in the discovery process is one of the key responsibilities of the Court, and "[i]t is well established that the scope of discovery is within the sound discretion of the trial court." *Freeman v. United States*, 566 F.3d 326, 341 (5th Cir. 2009).

> **Interrogatory No. 2**: Please provide the dates and addresses of roadblocks set up by LPD [Lexington Police Department] from January 1, 2020 through present.
>
> 1. For each roadblock, identify all criteria used for selecting the location for the roadblocks/checkpoints;
> 2. For each roadblock, identify each individual that participated in the decision to erect the roadblock;
> 3. For each roadblock, identify each LPD officer that participated in conducting stops and searches at the roadblock;
> 4. For each roadblock, identify the number of vehicles stopped;
> 5. For each roadblock, identify the number of vehicles searched;
> 6. For each roadblock, identify the number of arrests made;
> 7. For each roadblock, identify the number of citations issued;
> 8. For each arrest or citation, identify the law or municipal code that was allegedly violated.

The City generally objects to this interrogatory as not proportional to the needs of the case, asserting: "all that is at issue are two roadblock stops in early 2022." [184] at 1. The Court disagrees.

As previously mentioned, the Court, in ruling on Defendants' motions for judgment on the pleadings, did not dismiss Plaintiff's claims against the City based on alleged violations of Fourth Amendment rights and Fourteenth Amendment equal protection rights relating to

3

roadblock stops. *See* Order [95]. With such claims, the City cannot be held liable for acts of their employees under a theory of respondeat superior. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). Instead, to prevail on these *Monell* claims, Plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policy maker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). Plaintiff can establish an official policy by demonstrating a persistent, "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*.

Here, Plaintiff alleges that LPD's roadblocks were set up without a constitutionally permissible reason, resulting in stops without reasonable suspicion in violation of the Fourth Amendment. In considering Plaintiff's Fourth Amendment claim, this Court must examine the evidence to determine the "programmatic purpose" of the roadblocks and balance the public interest, if any, advanced by the roadblocks with the privacy and liberty interests of the public. *Collins v. Ainsworth*, 382 F.3d 529, 538-39 (5th Cir. 2004).

Plaintiff also alleges that the roadblocks were set up and operated in a racially discriminatory manner. Specifically, he alleges the roadblocks were set up in or near predominately black neighborhoods and used to stop and cite black motorists, but not white motorists. As relief for these alleged violations, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief in the form of an order enjoining Defendants from committing these violations in the future.

Plaintiff should have the opportunity to discover whether the City had a practice of utilizing unconstitutional roadblocks. The very nature of a *Monell* claim often necessitates broad, but not unduly burdensome, discovery. The Court finds that Interrogatory No. 2 toes that

line. The interrogatory seeks relevant information such as the number, locations, and purposes of the roadblocks.[1]

The City asserts that in response to Interrogatory No. 2, it produced arrest reports pursuant to Fed. R. Civ. P. 33(d) and that Plaintiff can gather the requested information from those reports. This document production, while perhaps sufficient to identify the number of arrests or the charges brought, does not fully answer the interrogatory. Plaintiff is not simply challenging the arrests which resulted from the roadblocks, but is challenging, in a comprehensive manner, the City's use of roadblocks. Information concerning a roadblock which resulted in no arrests would remain relevant and responsive to this interrogatory.

Finally, the City states that it does not keep records of the number of vehicles stopped or searched during roadblocks. The representation of a party's attorney that information does not exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate. *See Washington v. Tubbs*, 2013 WL 6796429, at *2 (W.D. La. Dec. 19, 2013). Plaintiff has not demonstrated that this particular information exists despite the City's representations. The City, however, must answer this interrogatory with the information it does possess.

> **Request for Production No. 1**: All records of stops conducted at roadblocks from January 1, 2020 to the present, including citations, computer aided dispatch ("CAD") records, incident reports, and arrest reports.

Much like Interrogatory No. 1, the City generally objects to this request as not proportional to the needs of the case, and for the same reasons discussed above, the Court overrules this objection. Records of citations, arrests, incident reports, and computer aided

---

[1] The Court notes the City's assertion that it supplemented its discovery responses to state, to the best of its ability, the purposes behind the checkpoints.

dispatches arising from the roadblocks are relevant to Plaintiff's claims, and this request is proportional to the needs of this case.

The City also raises a specific objection concerning the request for citations issued during the roadblocks. The City explains that a citation does not indicate whether it was issued at a roadblock. The City argues that it would be "painstaking to sort through all citations written for a search that cannot with any certainty produce what Plaintiff claims to be looking for: citations written at checkpoints." [184] at 4.

The Court is hesitant to preclude a party from seeking relevant information because the opposing party lacks an efficient means to search its own documents. Moreover, the City explained to Plaintiff that the citations are organized by date, and by searching the citations (written on the dates when roadblocks are known to have been used) for the officers involved in the roadblocks and the time periods during which the roadblocks were active, the City should be able to conduct an efficient and effective search for the relevant information. Where the City can determine that a citation was issued during a roadblock, the citation should be produced.

> **Request No. 4** (revised): All body-worn and dash camera footage of arrests made at the roadblocks identified in DEF 00049, DEF 00050, and DEF 00061-DEF 00185.

The City explains that this request involves body camera videos from over sixty separate arrests and argues that the request is neither relevant nor proportional to the claims at issue. Again, the undersigned disagrees. Video footage of the arrests made at the roadblocks (which form the bases of Plaintiff's claims) is relevant to the "programmatic purpose" of the roadblocks and the issue of whether the roadblocks were operated in a racially discriminatory manner. Production of this footage is proportional to the needs of the case.

The City also expresses concern for the privacy interests of the third parties shown in the videos. This concern does not prevent the production of videos, though it might provide a basis for an appropriate protective order. The parties are directed to confer in good faith in an effort to agree to a protective order. Failing agreement, the matter shall be addressed by appropriate motion filed on or before January 10, 2024.

> **Request No. 13**: All documents related to the City of Lexington Board of Alderman's review, assessment, or evaluation of LPD's activities, including but not limited to any review, assessment, or evaluation of LPD's roadblocks and traffic stops.

The City objects to the overbreadth of this request. Indeed, this request seeks the Board of Alderman's review, assessment, or evaluation of *all* LPD activities with no time limitation. This request is not proportional to the needs of the case, and the Court will limit it to all documents relating to the City of Lexington Board of Alderman's review, assessment, or evaluation of LPD's use of roadblocks from January 1, 2020, to present.

> **Request No. 18** (revised): Personnel records for Defendants Charles Henderson, Samuel Dobbins, Cordarius Epps, James Shiers, and Justin Newell, spanning the length of their employment with LPD related to roadblocks/checkpoints and racial bias, including but not limited to, complaints and grievances filed against the officer, disciplinary action taken against the officer, and documentation or trainings and certifications.

The City notes its response to Plaintiff's revised request: "Defendants object to this Request as overly broad in scope and time and seeking irrelevant information unrelated to the claims in this case. The request seeks five officers' entire personnel files including pay information, sensitive medical information, and all complaints and grievances, no matter what the subject, against the officers. To the extent not objectionable and limited to training records and complaints or disciplinary actions regarding roadblocks/checkpoints and racial bias, see DEF-00256 to DEF-0289 previously produced." [184] at 13.

7

In reply, Plaintiff states that he seeks only the portions of the personnel files "related to roadblocks/checkpoints and racial bias, including complaints and grievances filed against the officer, disciplinary action taken against the officer, and documentation of training and certificates." [185] at 17.  Plaintiff, however, argues that the City's response remains deficient based on its scant production.

With the record before it, that Court cannot determine whether more responsive documents exist.  Thus, the Court will simply make clear that the City should produce all personnel records relating to roadblocks/checkpoints and racial bias, including complaints and grievances filed against the officer, disciplinary action taken against the officer, and documentation of training and certificates.

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion to Compel [174] is GRANTED in part and DENIED in part;

2. On or before January 12, 2024, Defendant City of Lexington shall produce to Plaintiff the documents and information as set forth herein.

SO ORDERED this the 28th day of December, 2023.

> s/Michael T. Parker
> UNITED STATES MAGISTRATE JUDGE